TORSKI, APPELLANT, *v.* MANSFIELD JOURNAL CO., APPELLEE.*

(No. 754—Decided January 18, 1956.)

*Messrs. Mayer & McClellan,* for appellant.
*Mr. Frank Kane* and *Mr. C. H. Henkel,* for appellee.

McCLINTOCK, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Richland County, Ohio. The parties will be referred to as they were designated in the court below, to wit, John G. Torski, plaintiff, and Mansfield Journal Company, defendant.

Plaintiff filed his petition against the defendant in the court below and for his cause of action says that the Mansfield News-Journal, a daily newspaper published in Mansfield, Ohio, and having a large circulation in that city and in Richland County, on November 3, 1953, in the city of Mansfield, published in such daily newspaper a false and malicious libel, as follows:

---

*Appeal dismissed, 165 Ohio St., 245. Motion to certify the record overruled, April 20, 1956.

"HELD FOR RAPE

"John George Torski, 55, of 955 McPherson St., was arrested by Mansfield police today on a warrant from Lancaster police charging him with rape of a 12 years old girl in Lancaster on Oct. 21. Torski was released to Lancaster police shortly after noon."

Plaintiff says that by reason of the publication of the false and malicious report, as aforesaid, he was injured in his reputation to the damage of $100,000, for which amount he prayed judgment against the defendant.

To this petition, the defendant filed an amended answer in which it is averred "that the publication of the matter concerning the plaintiff set forth in his petition herein was a fair and impartial report of the filing of an affidavit and the issuing of a warrant for the arrest of the plaintiff accused of a crime in a criminal cause in a court of competent jurisdiction; namely, the Municipal Court of Lancaster, Ohio; and that relying upon the contents of said affidavit and the warrant that was issued, and upon written evidence and information, it was justified and privileged to publish on November 3, 1953, the item which appeared in its newspaper of that date."

To this answer, the plaintiff filed a reply, as follows: Plaintiff admitted that an affidavit had been filed in a court of competent jurisdiction substantially as set forth in defendant's amended answer and that a warrant was issued from said court which contained the same charge as set forth in the affidavit, and that the plaintiff was arrested by police officers in the city of Mansfield, Ohio, and was held for delivery to the police of Lancaster, Ohio.

The cause came on for hearing before the court and a jury, and at the conclusion of the plaintiff's testimony, the defendant filed a motion for a directed verdict, which was overruled by the court below. Thereafter, at the conclusion of all of the testimony in the case, defendant renewed its motion for a directed verdict, which motion was sustained by the court, and judgment was entered for the defendant.

Plaintiff filed a motion for new trial, which motion was overruled by the court, and the cause was appealed to this court on questions of law; and for his assignments of error, plaintiff alleges:

"1. The court erred in refusing to admit in evidence plaintiff's exhibits 1 to 7 inclusive as they were offered during the trial of the plaintiff's case.

"2. The court erred in refusing to admit in evidence the plaintiff's exhibits 1 to 7 inclusive at the close of plaintiff's evidence.

"3. The court erred in admitting defendant's exhibits 1-2 and 5 in evidence.

"4. The court erred in failing to admit in evidence plaintiff's exhibits 1 to 7 inclusive when offered after the defendant had rested.

"5. The court erred in failing to submit the issues to the jury under proper instructions and in directing a verdict in favor of the defendant.

"6. The court erred in overruling the plaintiff's motion for a new trial.

"7. The judgment is against the manifest weight of the evidence and is contrary to law."

However, there is only one question involved in this case, to wit:

"A proper interpretation of Section 2317.05 of the Revised Code of Ohio does privilege the publication of a fair and impartial report concerning the filing of an affidavit, the issuing of a warrant, the arrest of a person accused of a crime in a criminal cause in a court of competent jurisdiction unless it is proved that the same was published maliciously or that the defendant refused or neglected to publish in the same manner in which the publication complained of appeared a reasonable written explanation or contradiction thereof."

Counsel for plaintiff and for defendant set forth in detail a stipulation of facts, signed by them, which reads as follows:

"1. An affidavit was filed on October 28, 1953, in a criminal cause styled, 'The State of Ohio vs. John G. Torski,' the plaintiff, in a court of competent jurisdiction, namely, the Municipal Court of Lancaster, Ohio, which affidavit was made by one Melva Swick, who after being duly sworn according to law, under oath stated that on or about the 21st day of October, 1953 at the County of Fairfield and in the City of Lancaster, that John G. Torski, the plaintiff herein,

" 'wilfully, forcibly and against her will, raped Melva Swick, she, Melva Swick, being a female person other than the daughter or sister of him, the said John G. Torski, and not being a female person under 12 years of age, contrary to Section 2905.02 of the Revised Code.'

"2. A warrant was issued October 28, 1953 from the Municipal Court, Lancaster, Ohio, for the arrest of John G. Torski, the plaintiff herein; that a photostatic copy of said warrant is hereby attached and made a part hereof and marked 'Exhibit A.'

"3. The Chief of Police of the City of Lancaster, Ohio, communicated with the Police Department of the City of Mansfield, Ohio, sending forward said warrant so issued from said Municipal Court of Lancaster, Ohio, which communication and warrant were received by the Police Department of the City of Mansfield, Ohio, on October 31, 1953.

"4. On November 3, 1953 at approximately 10 a. m. the Police Department of the City of Mansfield, Ohio, at the request of the Police Department of the City of Lancaster, Ohio, arrested and took into custody John G. Torski, the plaintiff herein, pursuant to and by authority of the affidavit and warrant heretofore set forth.

"5. The defendant on November 3, 1953 published in its newspaper known as the Mansfield News-Journal the article as set forth in the petition of the plaintiff.

"6. On November 6, 1953, John G. Torski appeared in the Municipal Court of Lancaster, Ohio, and at that time an order was made by the Judge of the Municipal Court of Lancaster, Ohio, a photostatic copy of which is hereto attached, made a part hereof and marked, 'exhibit B.'

"7. On November 7, 1953 the defendant published in its newspaper, the Mansfield News-Journal, the article as set forth in the second defense of the amended answer of the defendant, which was an accurate statement of facts and made voluntarily by the defendant."

More in detail, the evidence is as follows:

The evidence shows that after the arrest of John G. Torski, a report concerning the same was prepared by two police officers of the city of Mansfield, Ohio, a copy of which report was intro-

duced into evidence and marked "defendant's exhibit 2"; that Ray Tharp, a reporter for defendant's newspaper, in his routine coverage of news at the city police department on November 3, 1953, was shown such report and discussed it with Mr. Ora Fair, desk man of the Mansfield police department; that Tharp thereupon contacted the editorial department of defendant's newspaper, was referred to Miss Marguerite Miller and furnished her with the information concerning the arrest of Mr. Torski, who was charged with rape under Section 2905.02, Revised Code of Ohio; and that the reporter then inquired of Ora Fair of the police department, who had charge of the record, as to the age of the female who had been raped, and Ora Fair informed him that the person was 12 years of age. This information was then communicated by the reporter to the office of the newspaper, and, thereupon, the defendant published the article which appeared in its newspaper on November 3, 1953.

The court below, in passing upon the motion for a directed verdict, mentioned the following testimony:

"What authority did you have for reporting to Marguerite Miller, that it was a twelve year old child, you have the witness' answer, *that he got it from the police officer who had possession of the police report.*"

And the record further shows that the newspaper reporter sought information as to the age of the victim and obtained it from Ora Fair, desk man at the police station, and the defendant has shown its good faith in voluntarily publishing the article dated November 7, 1953, heretofore referred to in this opinion.

The defendant, on November 7, 1953, published in its newspaper the following news article of and concerning the plaintiff:

"MANSFIELDER EXONERATED

"A 55-year old Mansfield man, arrested last week on a warrant charging him with assaulting a Lancaster girl, was released yesterday, the victim of a wrong license number given by the girl to Lancaster police.

"Judge William C. Pickering, of the Lancaster Municipal Court said today that John G. Torski, of 955 McPherson St., had been completely exonerated of all connection with the crime.

"It was a matter of mistaken identity, Judge Pickering said.

"Trace Wrong Number

"Torski was arrested on the strength of a license number given to Lancaster police by the 24-year old rape victim. The license number was traced to Torski, and he was picked up by local police officers and taken to Lancaster for hearing.

"When arraigned in Lancaster Municipal Court yesterday, the girl told the judge that Torski was not her assailant and that she had been assaulted by two men, each about 30 years old.

"Attorney Leslie Wagner, whom Torski retained as his lawyer, said that the Lancaster police did not send any description of the assailants or assailant with the arrest order on the warrant and that the arrest was made solely on the basis of the license number."

We find in Section 2317.05 of the Revised Code, the following:

"The publication of a fair and impartial report of the return of any indictment, the issuing of any warrant, the arrest of any person accused of crime, or the filing of any affidavit, pleading, or other document in any criminal or civil cause in any court of competent jurisdiction, or of a fair and impartial report of the contents thereof, is privileged, unless it is proved that the same was published maliciously, or that the defendant has refused or neglected to publish in the same manner in which the publication complained of appeared, a reasonable written explanation or contradiction thereof by the plaintiff, or that the publisher has refused, upon request of the plaintiff, to publish the subsequent determination of such suit or action. This section and Section 2317.04 of the Revised Code do not authorize the publication of blasphemous or indecent matter."

In a reading of this record, this court is of the opinion that the court below was correct in its finding that there was no evidence of malice on the part of the defendant.

Also, we quote from *Heimlich* v. *The Dispatch Printing Co.*, 18 N. P. (N. S.), 505, 26 O. D., 234, the second and third paragraphs of the syllabus, as follows:

"When the privileged occasion fact is shown, a presumption arises therefrom that the publication was without malice, which remains with defendant until rebutted by evidence of express malice. The use of the term 'maliciously' in the statutes,

Section 11343-1 and 11343-2, relieving the publisher of report of proceedings in court, filing of affidavit, etc., unless it is proved to have been published 'maliciously,' is held to mean and comprehend 'express malice,' because the intent and purpose of the amended statutes was to abrogate the old rule which allowed action for simple malice in law. That the statute thus allows redress for actual malice notwithstanding privileged occasion is another reason for holding the statute constitutional.

"The question of express malice is for the jury, where there is some evidence tending to show it. Inaccuracy of report, or comment by publisher may constitute a scintilla of evidence of express malice, although a mere mistake innocently made through excusable inadvertence cannot in any case be evidence of malice. While express malice may be shown by hatred or individual spite or malevolence as between individuals, still this cannot be so against a corporation, in which case it must be established by evidence of a wrongful act intentionally done, without just cause or excuse, as where a publication clearly appears to have been made with reckless disregard of another."

And, at page 515:

"It must be kept in mind too that the mere falsity of the libel is not alone sufficient evidence to show express malice, or to destroy the privilege. It is essential to show knowledge of the falsity of the libel on the part of the defendant in order to show express malice. *Laing* v. *Nelson,* 40 Neb., 252; *Ashcraft* v. *Hammond,* 197 N. Y., 488; *Hume* v. *Kusche,* 42 Misc., 414; *Atwater* v. *News Co.,* 67 Conn., 504, 519; *Edwards* v. *Chandler,* 14 Mich., 471; *Newell L. & S.,* p. 398, notes 32 and 33."

The judges of the Court of Appeals of this Appellate District, sitting by designation in the Second Appellate District, affirmed the decision of the lower court in the above case in 6 Ohio App., 394.

The material part of the defendant's publication was a report that the plaintiff had been arrested and charged with the crime of rape rather than a report of the age of the rape victim. The plaintiff seeks to divert the court's attention from the principal part of the published article, pertaining to the plaintiff's arrest for the crime of rape, to the age of the rape victim, which

is immaterial so far as these proceedings and the plaintiff are concerned.

A newspaper account of judicial proceedings is privileged where such account is fair, impartial and substantially accurate, even though it may contain matter otherwise libelous. *Lancour* v. *Herald & Globe Assn.*, 111 Vt., 371, 17 A. (2d), 253, 132 A. L. R., 486.

"It is contended on behalf of the plaintiff that the trial judge erred in charging the jury that '* * * if the newspaper's account of such court proceeding is a fair, impartial and substantially accurate report, the privilege of the newspaper to publish it is a complete defense * * *.'

"The position taken by the plaintiff is that the word 'substantially' should not have been used but that the account should have been a 'fair, impartial and accurate' report of the proceedings in question.

"We are of the opinion that the charge of the trial court was clear, was fair to the plaintiff, and correctly stated the law." *Vaughan* v. *News Leader Co.* (C. C. A. 4), 105 F. (2d), 360.

"A plea of privilege under Section 337 of the Civil Practice Act, providing that no civil or criminal action for libel may be maintained against the publisher of a newspaper for the publication 'of a fair and true report of any judicial * * * proceedings' without proof of malice, is properly upheld, in an action for libel alleged to consist in the publication in defendant's newspaper of an article stating that an action had been commenced against plaintiff herein for fraud; and this, notwithstanding the case had not been brought before a court or judge. The filing of a pleading is a public and official act in the course of judicial proceedings and the publication of a fair and true report thereof is privileged." *Campbell* v. *N. Y. Evening Post, Inc.*, 245 N. Y., 320, 157 N. E., 153, 52 A. L. R., 1432.

"But we cannot escape the conclusion reached * * * that the filing of a pleading is a public and official act in the course of a judicial proceeding, and that a publication thereof is privileged if it be a fair and impartial report of such proceeding, and without malice." *Lybrand* v. *The State Co.*, 179 S. C., 208, 184 S. E., 580, 104 A. L. R., 1118.

The plaintiff relies on *Westropp* v. *E. W. Scripps Co.*, 148 Ohio St., 365, 74 N. E. (2d), 340. It is to be noted that it is stated in that case that malice is presumed in an action involving libel per se. The *Westropp case* involved the malicious publication by a newspaper publisher of an article which did not arise out of, or purport to be a publication of, an indictment, the issuance of any warrant or the arrest of any person; and the defense in such case was not based upon the statutory privilege as provided by the General Code, and, therefore, has no application to the facts in this case.

In conclusion, by reason of the facts of this case and the law heretofore cited by this court, none of the assignments of error are well taken, and the judgment must be, and hereby is, affirmed.

*Judgment affirmed.*

Montgomery, P. J., and Putnam, J., concur.